THE CITY OF WICHITA v. JANE COGGSHALL.
No. 87.

1. PETITION IN ERROR—*Time for Filing.*    Where a verdict is returned into court on the 12th day of October, 1890, and motion for new trial is filed on the 14th day of October, and overruled the 18th day of October, and the final judgment is rendered on the verdict on the same day of overruling the motion for new trial, the party has one year after the 18th day of October, 1890, to file his petition in error and commence his proceedings for the reversal or vacation of such judgment.

2. EVIDENCE—*Demurrer Properly Overruled.*    Where there is some evidence tending to prove each fact necessary to sustain the plaintiff's right to recover, a demurrer to evidence should be overruled and the facts submitted to the jury for their findings, under proper instructions from the court.

3. INSTRUCTIONS—*Properly Refused.*    Where the court in its general instructions to the jury charges them on certain propositions of law, and the charge contains the law correctly, it is not error for the court to refuse to charge them on the same proposition in the language set out in the written request of the party.

4. NEGLIGENCE—*Defective Sidewalk—Notice.*    A person who has notice of a defective condition of a sidewalk in a city is not neces-

· sarily negligent in using the same, if she does so in a careful and· prudent manner.

5. EVIDENCE—*Experts—Hypothetical Questions.* Where a person has been educated as a physician and surgeon, he may give his opinion on questions pertaining to his profession, and may testify from his personal examination; and when he does so his opinion must be derived from his examination, and not depend upon the ; statements of others. If the witness does not speak from his personal examination, his opinions must be based on hypothetical questions propounded to him. The hypothesis must be based on the truth of all the evidence given in the case, and must be so framed that the witness can answer it intelligently, and the answer of the witness must be based on the hypothesis stated, and not' upon a consideration of what might, or might not, have happened under certain conditions. It should be an opinion of the witness predicated on the hypothesis containing the facts.

6. ——— *Answer not Responsive.* Where a witness, in reply to a hypothetical question, makes an answer that is not responsive to the question and states facts that are incompetent as evidence, the court should strike the answer out and direct the jury not to consider it as any part of the evidence in the case.

MEMORANDUM.—Error from Sedgwick court of common pleas; JACOB M. BALDERSTON, judge. Action for personal injuries by Jane Coggshall against The City of Wichita. Judgment for plaintiff. Defendant brings the case to this court. Reversed. The opinion herein was filed February 6, 1896.

The statement of the case, as made by JOHNSON, P. J., is as follows:

This action was commenced in the court of common pleas of Sedgwick county, on the 29th day of April, 1890, by Jane Coggshall against the city of Wichita, to recover the sum of $5,000 as damages which she claimed to have received by reason of the negligence of the city in permitting and suffering one of its sidewalks, within the municipal corporation, to become and remain out of repair, defective, and dangerous, by

reason of which she was injured. It was alleged that at the time of her injury she was in the exercise of due care and caution. The city, by way of defense to the action of the plaintiff below, in its answer, denies generally all the allegations made by the plaintiff below, and alleges that if she was injured as claimed the same was due to her own carelessness and negligence, which contributed directly thereto, and the city was without fault. The case was tried by the court and jury. On the trial, there were various objections taken to evidence and rulings of the court on admission of evidence, and on the refusal of the court to admit certain other evidence, and in the refusal of the court to give instructions requested by the defendant below. The trial resulted in a verdict and judgment for the plaintiff below in the sum of $500. The city filed a motion for a new trial, which was overruled, exceptions taken, case made and filed in the supreme court, and afterward duly certified to this court for its decision.

*Adams & Adams*, for plaintiff in error.

*Noah Allen*, and *Sankey & Campbell*, for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J. : This action was commenced in the court of common pleas of Sedgwick county on the 29th day of April, 1890, by the defendant in error against the city of Wichita, to recover damages alleged to have been received by reason of a defective and dangerous sidewalk in said city, which the city had negligently permitted to be and remain in a defective and dangerous condition for a long time, with full knowledge of its condition; the petition alleges that while plaintiff below was traveling over said sidewalk, in

company with other parties, going to church, and while in the exercise of due care and without any fault on her part, she had her foot caught in a hole in the sidewalk, and was thereby thrown down and injured. After the issues had been joined, the case was tried by the court and jury, and resulted in a verdict and judgment for $500 in favor of the plaintiff below. Defendant below excepted, made case, and filed the same in the supreme court, which was duly certified to this court for review.

The first matter for the consideration of this court arises on the motion of the defendant in error to dismiss the petition in error, for the reason that the petition in error was not filed in the supreme court within the time allowed by law. The record brought to this court shows that the jury was impaneled and the trial commenced on the 10th day of October, 1890, and that the jury returned their verdict into court on the 12th day of October; that the plaintiff in error filed its motion for a new trial on the 14th day of October; that the motion was overruled on the 18th day of October, and that final judgment was rendered on the verdict of the jury October 18, 1890, and defendant below given 60 days to make and serve a case for review; that afterward, on the 5th day of December, 1890, the time was further extended to make and serve a case; that the case was made and served within the time given by the court, and was settled and signed by the judge who tried the case on the 17th day of April, 1891, and the petition in error, with the case made attached, was filed in the office of the clerk of the supreme court on the 16th day of October, 1891. Section 556 of the code of civil procedure fixes the limit of time in which proceedings in error for the reversing or vacating of a judgment or final order can

be commenced. This section limits the time to one year from the rendition of the judgment or making the final order. The judgment and final order in this case were not made until the 18th day of October, 1890, and the petition in error was filed in the supreme court within one year after the overruling of the motion for a new trial and the rendition of final judgment. The motion to dismiss is not well taken, and must be overruled.

The first error complained of by counsel for plaintiff in error is that the court erred in overruling the demurrer of the plaintiff in error to the evidence of the defendant in error. The plaintiff introduced some evidence tending to show that, at the point where she was injured, there were slight defects in the sidewalk ; that it was a board walk, an old one ; that the stringers were laid on the ground, and they had been there for such length of time that they had partially decayed and settled, until the boards forming the top of the walk, at one end, lay on the dirt, and at one place there was a depression or hole in one of the boards ; that while plaintiff below was on her way to church, in company with others, in passing over this part of the walk, in the dark, she caught her right foot in the hole in the decayed board and was precipitated to the walk, falling on her shoulder and back ; that she was unable to get up and had to be assisted ; that she continued on with her husband and Doctor Adams and her children to the Methodist church, and she remained in the church until near the close of the services, and then she and the other parties who accompanied her to church returned home, and after her return home Doctor Adams made some kind of preparation and applied it to the injured portions of her person ; that she suffered pain while in the church and on the way home,

and has continued to suffer pain more or less ever since; that she was confined to her bed for a long time, and under the care of a doctor, and was unable to do her usual household work, and has never since been able to do any kind of hard labor; that before her injury she was a strong, healthy woman for one of her age, being 64 years old; that the sidewalk had been in a defective condition for a long time prior to the time she was injured, and that the walk was in the city limits and on one of the public streets of the city. This is briefly what the evidence tends to prove. There was some evidence on each material fact tending to prove the claim of the defendant in error for damages, and it was the duty of the trial judge to submit the facts to the jury for their determination as to the liability of the city, under proper instructions. (*Steelsmith v. U. P. Rly. Co.*, 1 Kan. App. 10; *L. and L. and G. Ins. Co. v. Hall*, 1 id. 18; *Rouse v. Youard*, 1 id. 270; *A. T. & S. F. Rld. Co. v. O'Melia*, 1 id. 374; *Richards v. Griffith*, 1 id. 518.)

It is claimed by plaintiff in error that the court erred in refusing to give the jury the following instruction:

"The law makes it the duty of the defendant city to keep its streets and thoroughfares in a condition reasonably safe for the traveling public; but the law does not require that its sidewalks and thoroughfares shall be absolutely safe, or in a condition that precludes the possibility of accident; this would be wholly impracticable. There is absolute safety nowhere; and cities cannot be held to insure every traveler from accident. They are bound to exercise only ordinary care, considering the nature and circumstances of the case. In determining whether the city used ordinary care, you may take into consideration the number of miles of wooden sidewalk in the defendant city. If you find the sidewalk where defendant received, if at

35—KAN. APP.

all, her alleged injury, was in a condition, considering the nature and circumstances of the case, reasonably safe for the average traveler, then you must return a verdict for the defendant.''

This instruction does not contain the law applicable to this case. That portion of this instruction relating to the city keeping its streets and thoroughfares in a reasonably safe condition for public travel, and that the city is only bound to exercise ordinary care in caring for its streets and sidewalks, is correct; but the number of miles of wooden sidewalks in the city is not to enter into the consideration of the jury in determining the question of whether the walk where the injury is claimed to have been received was safe or not. The only question for the jury to determine was, whether the walk was defective and dangerous at the point where the accident happened, and whether the city had notice of its dangerous condition, or whether it had been in such defective and dangerous condition for such length of time as the city should be presumed to have had notice of its condition. That portion of this instruction that contains the law correctly is substantially given to the jury in the general charge of the court, and it was not error for the court to refuse to give the instruction in the form as requested.

The second instruction asked by the plaintiff in error does not contain the law on the question of the rights and duties of the traveler on the public streets and sidewalks in the city. In the case of *Falls Township v. Stewart* (ante, p. 403), 42 Pac. Rep. 926, Stewart was injured while driving a wagon loaded with hay over a certain highway and culvert in Falls township, in which the road and culvert were defective and

dangerous, and counsel for the township requested the court to instruct the jury:

"If the jury believe from the evidence that the plaintiff was warned or had knowledge of said highway or culvert being unsafe, and with such knowledge, and with the defects in said highway or culvert, if any existed, plainly to be seen by any person looking for the same, ventured upon said highway or culvert, and sustained injury thereby, he cannot recover, even if you should find said highway or culvert was unsafe."

The district court refused to give this instruction to the jury, and this court, commenting upon the case, says:

"We do not think the court erred in refusing to give these instructions as requested. If they contain the correct principle of law, it would make every person traveling upon a highway or bridge that is unsafe guilty of negligence. Such is not the law. The supreme court of this state, in several well-considered cases, lays down a different rule. In the case of *Corlett v. City of Leavenworth*, 27 Kan. 673, the court says: 'The fact that a person attempts to travel on a street or sidewalk after he has notice that it is unsafe or out of repair is not necessarily negligence.' In the case of *Langan v. City of Atchison*, 35 Kan. 318, the court says: 'The mere fact that a person knows the sidewalk is defective will not prevent him from using it, and ordinarily a person is not obliged to forsake the sidewalk and travel in the street or take another way because he has knowledge of its defects. . . . Of course a person having knowledge that a sidewalk is defective or somewhat dangerous must use ordinary care and prudence to avoid danger.' In the case of *Maultby v. City of Leavenworth*, 28 Kan. 746, the court says: 'Neither is a party, although he is aware of the condition of the sidewalk, necessarily obliged to go around the block or travel by another street.' In the case of the *City of Emporia v. Schmidling*, 33 Kan. 487, the court says: 'However, there is a more serious ob-

jection to the instruction. It expresses the idea that if the plaintiff undertook to pass over the walk, with the knowledge that it was defective or dangerous, then that of itself would constitute negligence which would defeat a recovery. This is not the law. Persons are not to be entirely debarred from the use of the streets because they may be out of repair.' A person is not to be deprived of the right to use a public highway because he knows that it is in a dangerous condition or unsafe. It requires of him the exercise of a high degree of care and prudence while using it — such care and caution as a reasonably prudent person would exercise under like circumstances. It is a question of fact for the jury to say, under all the evidence, whether his acts were those of a reasonably prudent person, and if the injury is without his own negligence, while he is in the exercise of an undoubted right, he is entitled to recover for such injury.''

Prudence should dictate to a reasonable person that it is safer to travel on a street or sidewalk where it is known to be safe and free from any defect, but he is not bound to select some other particular street or walk because he may have notice that it is defective; but such notice does require of him the exercise of greater care and caution while using it than it would if he had no notice of the defects.

We think the following instructions lay down the correct rule in relation to the rights and duties of travelers on the streets and walks:    .

" 3. You are further instructed, that every person passing over the sidewalk of a city is required to exercise such care and diligence in doing so as persons of ordinary care and diligence would use under the same or similar circumstances; but the fact that a person attempts to travel on a street or sidewalk after having notice of its defective condition is not necessarily negligence; and in determining whether the plaintiff used such care and diligence at the time she

received the injuries complained of, you will' consider the nature of the alleged defects, whether unsafe or not, the time of day, the light or darkness at the time or place the injury was received, the knowledge of the plaintiff with regard to its condition at and previous to the alleged injury, and any other fact or circumstances disclosed by the evidence which would tend to show such care or want of it."

"11. You are further instructed, that the plaintiff was bound to use ordinary care and diligence in the use of the sidewalk, and in this connection you may take into consideration the knowledge of the plaintiff, or her opportunity for knowledge, in regard to the condition of the sidewalk where the alleged injury was received. If you find the sidewalk where the accident occurred was in a defective condition, so as not to be ordinarily safe for the average traveler, and that this dangerous condition was known to the plaintiff, and that the plaintiff voluntarily and unnecessarily chose to use such sidewalk, then it must be assumed that plaintiff did not exercise ordinary prudence, entered the peril at her own risk, and cannot recover in this action.".

It is urged by counsel for plaintiff in error that the court erred in the admission of improper testimony, over the objection of defendant below, and that the court erred in overruling the motion of the defendant below to strike out and take from the consideration of the jury incompetent testimony that was not responsive to the questions propounded.

On the trial of the case, the plaintiff below called and had sworn and examined as a witness on her behalf one Dr. J. M. Minick, and, after showing his profession and his competency as an expert, counsel for plaintiff below propounded to him the following hypothetical question :

"Q. Doctor, assuming it to be a fact on or about the 8th day of December, 1889, the plaintiff, Mrs. Coggshall, while traveling along the sidewalk on

City of Wichita v. Coggshall.

Fourth avenue in this city, stepped into a hole in said sidewalk with the right foot, as a result of which she fell back on said sidewalk, striking upon the same with her hip and elbow, or arm, her right foot remaining in said hole, and thereby twisted or injured her back and spine, from the effects of which she was confined to her bed for several months, and was unable to turn herself in bed on account of the pain and suffering in her back and spine for a great portion of the time; and during all of which time after said accident and up to the present time she has suffered severe pains in her back and spine, and after having gotten out of her bed was compelled to walk for a long time with a crutch and cane; and now suffers severe pain in her back when she dresses, or in doing any heavy lifting, or while bending over or stooping down; and that the plaintiff's foot was caught in the hole in said sidewalk so as to twist, fracture or sprain her right ankle by the fall; and that the plaintiff was 64 years of age at the time of said accident, had never suffered or been troubled with any weakness or pains in her back or spine prior to receiving said fall, and that her pain and suffering in her back and spine are so severe now that the plaintiff is unable to sleep or rest for the greater portion of the night — assuming all these propositions to be true, state your opinion as to whether said injuries to the plaintiff's spine or back are permanent or otherwise.''

This question was objected to as incompetent and assuming facts not proven or in evidence, nor based on facts in evidence, or tending to prove facts, and being too indefinite. This question was not consistent with the facts proven and it assumed more than was shown by the evidence, and the objection ought to have been sustained. A hypothetical question propounded to a scientific witness should contain substantially the facts as shown by the evidence on the trial, and should be clear and definite, so that the wit-

ness can give a concise and definite answer thereto. The question asked in this case was so indefinite and contrary to the facts proven that it could not be answered intelligently. The witness made the following desperate effort to answer this question:

"A. Well, yes; I presume it would be permanent under such circumstances as that. As a matter of fact, of course, that depends on the injuries in the back. Medical men, surgeons, consider sprains one of the most serious accidents that can possibly befall a person, where they are severe. Be they so slight, impairing maybe the fiber of the ligament to that extent, and that even in spinal column the cartilage between the vertebræ — that is, between the joints of the back-bone — may be dislocated; the muscles drawn and ligaments torn, causing extravision of blood, and all of these things combined make it very serious. Of course, under the presumption that is stated, there might have been some injury to the bone even, and there might have been a tearing of the ligaments, and when the ligament is torn it also tears the small nerves and blood-vessels, as a general thing; those small nerves may become, in the cicatrization that occurs where it holds, they may become held in the cicatrice, according to Ashley and Grove; and I would presume that if the case was injured as stated, that there would be some symptoms and observable signs whereby we could distinguish something in regard to the injury."

The defendant below moved to strike out all of the explanatory remarks of the witness as not competent and not responsive to the question, which motion was overruled by the court. We think the explanatory remarks were entirely unnecessary and highly improper. The witness, in answer to this question, tells the jury what might have been the effect of the fall and what injury might have been done, and discusses he matter learnedly, as though he was delivering a

City of Wichita v. Coggshall.

lecture on injuries of the spine and shoulders to a class of medical students as to what injuries do sometimes happen by reason of serious and violent falls—that they sometimes tear and rupture the muscles and bones of the spine and shoulder. Where an expert does not speak from personal examination, the question must be put hypothetically, based either upon the hypothesis of the truth or of the evidence given in the case, or upon a hypothesis specially framed of certain facts within the limits of the evidence. The question should be so framed that it is capable of a definite answer, and the answer should be clear enough that the jury could know what the opinion of the witness really was; but in this case we are unable to discover, really, what Doctor Minick's opinion was, or is. He says : " Well, yes ; I presume it would be permanent under such circumstances." Almost any intelligent person could presume or guess what the result might be, or could give as clear an opinion as Doctor Minick did. This explanation was highly improper, and was prejudicial error. There are other objections and exceptions to the introduction of evidence, but the same errors may not occur on a retrial of this case, and it is unnecessary for us to discuss them here.

The judgment is reversed, and the case remanded to the district court of Sedgwick county, with direction to set aside the verdict of the jury and grant a new trial herein.

All the Judges concurring.